JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Jeffrey Sims, appeals from a decision of the Cuyahoga County Court of Common Pleas, arguing that his motion to withdraw his guilty plea should have been granted and that his attorney was ineffective. Finding no merit to his arguments, we affirm.
 {¶ 2} Sims was charged with one count of aggravated robbery and one count of felonious assault. Five pretrials were held, and a trial date was set. On the date of trial, Sims failed to appear, and a warrant was issued for his arrest. He was taken into custody two weeks later. Two more pretrials were held, and another trial date was set.
 {¶ 3} On the day of trial, Sims's attorney complained to the court that his client was in jail clothes. Sims informed the court that he had other clothing at the jail but the deputies never asked him if he wanted to change his clothes.
 {¶ 4} The state placed the plea offer on the record. Sims was to plead guilty to felonious assault, a felony of the second degree, and the state would dismiss the aggravated robbery charge, a felony of the first degree. Sims's attorney stated that he explained the plea offer and consequences to Sims, but that it was Sims's desire to reject the plea offer. The court asked Sims if that was correct. Sims replied, "No, I haven't had enough time to think about it. I didn't have enough time to think about it."
 {¶ 5} The trial court explained to Sims that he should not plead guilty if he was not guilty, but said that they were going to trial today, that the jury was waiting, *Page 4 
and that Sims needed to make a decision. The court pointed out that it was 1:30 p.m., and that Sims had been debating whether he would accept the plea since 9:30 a.m. The court gave Sims another five minutes with his attorney. Thereafter, Sims pled guilty to felonious assault.
 {¶ 6} While waiting for his sentencing hearing, Sims hired a new attorney, who filed a motion to withdraw Sims's guilty plea. A hearing was held on the motion. Sims testified that his plea was not voluntary because he was pressured by a deputy and by his attorney. Sims claimed that the deputy told him to accept the plea offer because a majority of the jury members would be white people from the suburbs. He complained that his trial attorney did not bring him clothes, contact his witnesses, or get him a misdemeanor plea offer. Further, Sims claimed that he was told he would have to testify, that his past record would be admissible, and that he would be found guilty because of his past. Sims asserted that his attorney told him that if he went to trial, the court would "whack" him at sentencing and that he would not come home until he was in his thirties. Sims testified that he had a valid self-defense claim.
 {¶ 7} On cross-examination, Sims testified that he did not remember missing his first trial date. Sims claimed that he was first advised of the plea offer the morning of trial. Sims testified that he remembered seeing the victim in court on the day he pled, but that he did not remember seeing the detective. He remembered the court asking him whether any threats or promises were made to get him to plead guilty, and even though he answered no, he claimed that he did not understand what *Page 5 
the court meant. Sims remembered being advised of the rights he was giving up by accepting the plea. Sims testified that he did not tell the court what the deputy said to him because he was never asked.
 {¶ 8} After the hearing, the court asked the prosecutor to find out whether the victim was available to testify if a trial was to go forward. A month later, the state informed the court that the victim was available to testify. The trial court allowed the state to present additional evidence as to the motion to withdraw. The state called Sims's trial attorney to testify because the court found that Sims had waived his attorney-client privilege during his testimony.
 {¶ 9} Sims's trial attorney testified that he heard Sims's testimony in the first hearing and that it was inaccurate. He testified that he met with Sims a number of times in county jail and discussed with Sims his potential defenses and the ramifications of going to trial. Sims's attorney testified that he advised him to find appropriate clothing for trial but never promised to supply clothes for him, and that he also advised Sims to consider cutting his hair, which was worn in long cornrows. The attorney testified that Sims refused to cut his hair.
 {¶ 10} His attorney stated that Sims did not give him the names of any witnesses other than the co-defendants. The attorney stated that he explained to Sims that if Sims testified, the jury would hear about his criminal record. The attorney testified that he was not aware that a deputy had spoken to Sims about his case, and that no one was in the room with them when he and Sims discussed Sims's options. The attorney stated that he was prepared to go to trial that day. *Page 6 
He testified that no threats or promises were made to get Sims to plead and that he felt that Sims had entered a knowing and voluntary plea. He stated that Sims was not thrilled with the plea, but that no one is ever happy when pleading guilty.
 {¶ 11} The court asked for post-hearing briefs. On April 11, 2008, the court denied Sims's motion to withdraw his guilty plea and sentenced him to two years in prison. Sims appealed, advancing two assignments of error for our review.
 {¶ 12} In Sims's first assignment of error, he asserts that the "trial court abused its discretion when it failed to grant defendant Jeffrey Sims's motion to withdraw his guilty plea."
 {¶ 13} Crim. R. 32.1 states as follows: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."
 {¶ 14} Under Crim. R. 32.1, one seeking to withdraw a guilty plea must show that the proceeding during which he entered that plea was extraordinarily and fundamentally flawed. State v. Smith (1977),49 Ohio St.2d 261, 264. "A presentence motion to withdraw a guilty plea should be freely and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court *Page 7 
must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." State v. Xie (1992),62 Ohio St.3d 521, 527, 584 N.E.2d 715.
 {¶ 15} The decision to grant or deny such motion is entirely within the trial court's discretion. Accordingly, we will not alter a trial court's decision absent a showing of an abuse of discretion.Xie, supra; State v. Peterseim (1980), 68 Ohio App.2d 211,428 N.E.2d 863, at syllabus.
 {¶ 16} "A trial court does not abuse its discretion in overruling a motion to withdraw: (1) where the accused is represented by highly competent counsel, (2) where the accused was afforded a full hearing, pursuant to Crim. R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request." State v. Johnson, Cuyahoga App. No. 83350, 2004-Ohio-2012, citing Peterseim, supra.
 {¶ 17} In State v. Montgomery, Cuyahoga App. No. 87246,2006-Ohio-3850, this court stated: "In a case in which the record reflects the defendant made his decision to enter a guilty plea at the time his case had been called for trial, with the parties fully prepared to go forward, the jury about to be chosen, and the witnesses present, the trial court certainly acts within its discretion to include *Page 8 
this circumstance in its subsequent consideration of the genuineness of the defendant's motion to withdraw his guilty plea."
 {¶ 18} Sims complains that he never wanted to plead guilty and that he had a valid self-defense claim. Prior to his plea, the court explained to Sims that if he was not guilty, he should not plead guilty. Sims was told that a jury was waiting and that everyone was prepared to go to trial that day. The victim was present in the courtroom. Sims was given another five minutes with his attorney to make a decision.
 {¶ 19} Sims decided to accept the plea. During the plea hearing, Sims acknowledged that no threats or promises were made to induce his plea and that he understood the rights he was giving up by accepting the plea offer. He was asked three times what his plea was, to which he responded guilty all three times. Also, we note that Sims spoke up regarding the situation with his clothing, and he asked the court what "unlawfully" meant before he pled guilty.
 {¶ 20} After reviewing the record of the plea hearing, we find that Sims was represented by highly competent counsel and that the dictates of Crim. R. 11 were followed. Although Sims complained that he was not given sufficient time to make a decision, according to the record before us, Sims was advised of the plea offer two days prior to the trial. In addition, he was given all morning and part of the afternoon to decide whether he would accept the plea offer or go to trial. There is no evidence in the record that Sims was pressured into pleading *Page 9 
guilty, and we find no merit to Sims's claim that he was confused about the court system. Sims had prior convictions for assault, theft, receiving stolen property, two robberies, and an aggravated robbery. He was not inexperienced in the criminal justice system. Sims has not demonstrated that the plea hearing was extraordinarily and fundamentally flawed.
 {¶ 21} Next we turn to the hearing on the motion to withdraw. The record reveals that Sims was given a full and impartial hearing on the matter, and the trial court gave full and fair consideration to Sims's request. The court heard from Sims, his trial attorney, and the state before making a decision. In addition, the trial court took into consideration the fact that the case had been set for trial twice, the jury was waiting, the victim was present, and Sims was given ample time to make a decision. We find that the trial court did not abuse its discretion when it denied Sims's motion to withdraw his guilty plea.
 {¶ 22} Sims's first assignment of error is overruled.
 {¶ 23} Sims's second assignment of error states, "The defendant was denied his right to effective assistance of counsel."
 {¶ 24} Sims argues that his trial attorney was ineffective because he did not subpoena Sims's witnesses and pressured him to plead guilty. Further, Sims argues that his attorney told him that he would have to testify and that the jury would hear about his criminal record. *Page 10 
 {¶ 25} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) the performance of defense counsel was seriously flawed and deficient, and (2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation.Strickland v. Washington (1984), 466 U.S. 668; State v. Brooks (1986),25 Ohio St.3d 144. Judicial scrutiny of defense counsel's performance must be highly deferential. Strickland, 466 U.S. at 689. In Ohio, there is a presumption that a properly licensed attorney is competent.State v. Calhoun, 86 Ohio St.3d 279, 1999-Ohio-102.
 {¶ 26} We find that Sims's attorney was not ineffective. Sims's attorney testified that Sims did not give him any names or addresses of witnesses other than the co-defendants. Further, we find that Sims's attorney properly advised Sims that he had an absolute right not to testify against himself, but if he chose to testify regarding his claim of self-defense, the jury would hear about his criminal record. Finally, as we previously stated, we do not find that Sims was pressured or threatened into pleading guilty. Accordingly, Sims's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MARY JANE BOYLE, J., CONCUR *Page 1